LAVER vs. McGLACHLIN.

*Justice of the Peace* de facto — *What constitutes.— His writ protects officer executing it.*

The trustees of a village assumed the right, under the charter, to appoint W. as a justice of the peace to fill a vacancy, and he, in good faith, filed his oath and the bond required by law, and assumed the duties of the office. *Held*, that even if the appointment was without authority, W. was a *de facto* justice, and a warrant of seizure of personal property, issued by him in due form in an action pending before him, would protect the officer who executed it.

APPEAL from the Circuit Court for *Sheboygan* County.

Action to recover possession of certain chattels, commenced before a justice of the peace. Upon appeal to the circuit court, a new trial was had, by the court alone, without a jury, upon a stipulation of facts, which was as follows: That defendant, as deputy sheriff, took the property in question, March 8, 1870, by virtue of a paper purporting to be a warrant of seizure, and without any other right or authority; that said paper was regular upon its face, and issued by C. H. Woodard, who was at the time acting as justice of the peace; that the proceedings before him, including his judgment, were regular in form; that the defendant in that action (plaintiff in this) was duly served with the process therein; that said Woodard was then acting as justice by virtue of an appointment made at a regular meeting on the 29th of January, 1870, by the president and trustees of the village of Sheboygan Falls, where he resided, to fill a vacancy caused by the resignation of L. B. Noyes, a duly elected and qualified justice of the peace, and to hold the appointment until a justice should be elected by the people at the next annual election; and that Woodard, prior to assuming the duties of his office, filed his oath of office and his bond duly approved as provided by law.

There was a further stipulation as to the value of the property taken, and the damages to be allowed the plaintiff for

the taking and detention, if judgment should be rendered in his favor.

The circuit court rendered judgment for the plaintiff, and the defendant appealed.

*John E. Thomas,* for appellant, contended, that chap. 280, P. and L. Laws of 1854, and the amendments thereto, confer full authority upon the officers of the village of Sheboygan Falls to fill by appointment a vacancy in the office of justice of the peace; that having accepted and qualified under such appointment, Woodard was an officer *de facto*, if not *de jure*, and his acts were valid as between third persons, and cannot be inquired into collaterally (*In re Bridget Boyle*, 9 Wis., 264; *State ex rel. Knowlton v. Williams*, 5 Wis., 308; *Parker v. Baker*, 8 Paige, 428); and that the deputy sheriff was bound to obey the warrant when placed in his hands, it being regular on its face. *People v. Collins*, 7 Johns., 549.

*George S. Graves,* for respondent, contended that the writ of replevin, issued by Charles H. Woodard, could afford no protection to the officer executing it, for the reason that said Woodard was not a justice of the peace, either *de jure* or *de facto*. The office of justice of the peace is an elective office, and cannot be filled by appointment. Art. 7, sec. 5, constitution of Wisconsin. A person acting as justice of the peace by virtue of an appointment is not an officer *de facto*. No authority can give *color* of title, which cannot confer a good title. Color of title is color of a *good* title. 8 How. Pr. R., 363 ; 39 Barb., 208. The village of Sheboygan Falls is an incorporated village, entirely distinct and separate in its government from any town organization. Its charter specially requires that the justices of the peace, acting therein, shall be elected by the people, and no authority is given to the president and trustees of said village, either by its charter or any other law of this state, to fill a vacancy in the office of justice of the peace by appointment. Chap. 280, Pr. Laws of 1854 ; chap. 212, Pr. Laws of 1858, secs. 1 and 2 ; chap. 209, Pr. Laws of 1862, sec. 5. The legis-

lature, in enacting chap. 494, General Laws of 1865, attempted to authorize only the town boards of supervisors to fill vacancies in the office of justices of the peace by appointment, and not the president and trustees of incorporated villages.

COLE, J. The sole question in this case is, whether the writ of replevin issued by Charles H. Woodard afforded protection to the defendant, a deputy sheriff who executed it. It is claimed by the plaintiff that it did not, because it is said that Woodard was not a justice, either *de jure* or *de facto*.

It appears that Woodard was appointed as a justice of the peace by the president and trustees of the village of Sheboygan Falls, to fill a vacancy caused by the resignation of one Noyes — who had been theretofore duly elected to the office — and that he was acting as justice by virtue of this appointment, when he issued the writ. And it is claimed that, so far as the public and third persons are concerned, he was a *de facto* officer, and that his official acts are valid. It seems to us that this position is fully sustained by the decisions of this court in the *Case of Boyle*, 9 Wis., 264, and that of the *State v. Bloom*, 17 id., 521. The latter case is precisely in point. In that case a party was indicted for a crime, tried, convicted and sentenced at a term of the circuit court for Jackson county, held by Isaac E. Messmore. This court held that the sentence was good and valid, notwithstanding the fact that Messmore exercised the office of circuit judge under the appointment of the governor, who had no authority whatever to make the appointment. See *State v. Messmore*, 14 Wis., 163. And yet, although the governor had no authority to appoint, the appointment was held to give color of title, and to constitute the person acting under it an officer *de facto*. In every element and principle the case of Bloom is strictly analogous to the one before us. For, assuming that the president and trustees of the village of Sheboygan Falls had no legal authority to appoint a justice, yet they assumed the right to make the appointment under their charter and amend-

ments thereto (chap. 280, P. & L. Laws of 1854; chap. 212, P. & L. Laws of 1858; chap. 209, P. & L. Laws of 1862; and chap. 494, Gen. Laws of 1865); and Woodard, it seems, in good faith assumed the duties of the office, and filed his oath and the bond required by law. It is apparent that it was not the case of a bold, naked assumption of an office by Woodard, without color of title or pretense of right. He doubtless supposed that he was a justice *de jure* as well as *de facto;* and though there may have been a defect in his title, yet we think his acts must be held legal and effectual to protect the defendant. No precise rule of a general nature can be extracted from the cases as to what constitutes an officer *de facto;* for each case necessarily depends in some degree upon its peculiar circumstances. Nor are the authorities entirely in harmony upon the subject. But we are disposed to adhere to our own decisions; and the case of Bloom is decisive of the question before us. According to the principles of that decision, Woodard was a justice *de facto*, acting under color of title, and his official acts are valid so far as the public and third persons are concerned.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for further proceedings according to law.