Fenelon and wife vs. Butts, imp.

*April 23 — May 11, 1880.*

*(1)* Constitutional Law. *Act authorizing appointment of court commissioner for two counties, void.*
*(2)* Officer. *Such appointee not a* de facto *officer*
*(3)* False Imprisonment: *Under void order, who liable.*

1. Ch. 49 of 1871 in terms authorizes the appointment of a court commissioner resident in the village of Waupun, in either of the two counties whose dividing line passes through that village, and empowers him to do anything in relation to any subject or matter in either of said counties as though he were a resident of that portion of said village of Waupun lying in the county in which the party or subject matter to be affected by his proceedings may reside or be located, and as though he were appointed in said county by the circuit judge having jurisdiction over the same. *Held*, that the act is void, as being in conflict with sec. 23, art. VII of the state constitution, which is construed as limiting the jurisdiction of court commissioners to their several counties.

2. The person appointed in pursuance of such void act is not a court commissioner either *de jure* or *de facto*.

3. The mere fact that defendant made the affidavit upon which a judgment debtor, after execution returned unsatisfied, was required to appear and answer before a person acting as court commissioner, but without any

Fenelon and wife vs. Butts, imp.

authority, is not ground for holding *as matter of law* that he was liable for the wrongful imprisonment of such debtor by order of such pretended commissioner for refusal to answer questions put upon such examination; but the question whether defendant did in fact direct or instigate the imprisonment, is for the jury, upon all the evidence.

APPEAL from the Circuit Court for *Dodge* County.

Action for false imprisonment. There was a judgment for the plaintiffs, from which the defendant *Butts* appealed. The case will sufficiently appear from the opinion.

*Eli Hooker*, for appellant:

1. The constitutional limitation of the powers of a court commissioner, in the words "*provided*, that said powers shall not exceed those of a judge of the circuit court at chambers," contained in art. VII, sec. 23, cannot have reference to territorial powers or territorial jurisdiction. It means simply that whatever things can be done by a circuit judge sitting at chambers, and no others, can be done by a court commissioner. 2. If the person officiating as court commissioner in this case was not legally appointed, he was yet an officer *de facto*, and his acts, as to third parties, are valid. He was appointed in due form by the circuit judge, under a law enacted by the legislature; had qualified in accordance with law; had assumed the duties and responsibilities of the office in good faith; and, succeeding one who had exercised the functions of the office for two years unquestioned, had himself been acting in like manner for more than a year, when these proceedings were brought before him. *State ex rel. Knowlton v. Williams*, 5 Wis., 308; *In re Boyle*, 9 id., 264; *Dean v. Gleason*, 16 id., 1; *State v. Bloom*, 17 id., 521; *Laver v. McGlachlin*, 28 id., 364; *In re Baker*, 11 How. Pr., 433; *People v. Nevins*, 1 Hill, 154; *People v. Covert*, 1 Hill, 674; *People v. Stevens*, 5 id., 616; *Green v. Burke*, 23 Wend., 490; *State v. Bartlett*, 35 Wis., 287; *State v. Goldstucker*, 40 id., 124; *People v. Hopson*, 1 Denio, 574; *People v. White*, 24 Wend., 525; *State v. Douglass*, 50 Mo., 593; *People ex rel. Ballou v.*

*Bangs*, 24 Ill., 184; *State v. Carroll*, 38 Conn., 449; *Hoboken
v. Harrison*, 1 Vroom, 73; *Fowler v. Bebee*, 9 Mass., 231;
*Commonwealth v. Fowler*, 10 id., 290. 3. Irrespective of the
question of jurisdiction of the court commissioner, the court
should have instructed the jury that, unless the defendant coun-
seled, directed or requested the imprisonment of the plaintiff,
he was not liable. *Freeman v. Adams*, 9 Johns., 116; *Curry
v. Pringle*, 11 id., 444; *Taylor v. Trask*, 7 Cow., 249; *Brown
v. Demont*, 9 id., 263; *Brown v. Crowl*, 5 Wend., 298; *Lewis
v. Penfield*, 39 How., 490; *Von Latham v. Libby*, 38 Barb.,
339; *Brown v. Chadsey*, 39 id., 253; *Peckham v. Tomlinson*,
6 id., 253; *West v. Smallwood*, 3 M. & W., 418; *Sowell v.
Champion*, 6 Ad. & E., 407; *Carratt v. Morley*, 1 G. & D.,
275; *Brown v. Chapman*, 6 Mann., G. & S., 365; *Lock v.
Ashton*, 12 Q. B., 871; *Barber v. Rollinson*, 1 C. & M.,
330.

For the respondent there was a brief by *J. B. Hays* and
*L. P. Fribert*, and oral argument by *Mr. Hays:*

1. The provision in sec. 23, art. VII of the state constitu-
tion, that the powers of a court commissioner shall not ex-
ceed those of a circuit judge at chambers, has reference not
only to the subject matter of his jurisdiction, but as well to
the territorial extent thereof. The court commissioner here
acted in two counties, lying in different circuits, and his
powers, therefore, exceeded those of either circuit judge.
Hence, the law authorizing his appointment was unconstitu-
tional; and the proceedings before him, culminating in the
imprisonment of the plaintiff, were *coram non judice*, and
absolutely void. 2. Jacobs was not an officer *de facto*, because
there was no such *office* known to the law as that in which he
pretended to officiate. 3. The appellant was liable for the
false imprisonment complained of. He *instituted* the pro-
ceedings from which it resulted, prosecuted them by his attor-
neys, was present in person while they were going on and
while the party was being imprisoned, and paid for the im-

prisonment.  *Bonesteel v. Bonesteel*, 28 Wis., 245; 1 Wait's Pr., 705; 3 Wait's Act. and Def., 319.

COLE, J.   The gravamen of the complaint is the two instances of the false imprisonment of the plaintiff *Mrs. Fenelon*, which it is alleged were directed, procured and caused by the defendant.   The defendant justifies the acts complained of by the proceedings had before court commissioner Jacobs, and the commitments made by him, which are set forth in the answer.   It appears that supplemental proceedings were instituted by the defendant in Dodge county, before Jacobs, on a judgment rendered in his favor in the circuit court of Fond du Lac county.   A transcript of that judgment was filed and the judgment duly docketed in Dodge county, upon which an execution was issued to the sheriff of the latter county.   The execution having been returned unsatisfied, the supplemental proceedings were instituted.   The plaintiffs resided at the time in Dodge county; Jacobs resided and had his office in that part of the village of Waupun which lies in Fond du Lac county.   The examination of the plaintiff *Mrs. Fenelon* was had before Jacobs at his office, and upon her refusing to answer certain questions asked her concerning her property, she was committed by the commissioner to the jail of Dodge county as for a contempt, there to remain until she was willing to answer.  Jacobs signs the order and commitments made out by him as "court commissioner residing at Waupun."   It is conceded that he was appointed court commissioner by the circuit judge of the fourth circuit under chapter 49, Laws of 1871.   That act authorizes the circuit judge of the fourth circuit to appoint one court commissioner, who shall reside in the corporate limits of the village of Waupun, in either Dodge or Fond du Lac county; and the court commissioner thus appointed is clothed with power and authority to do anything in relation to any subject or matter in either of said counties of Dodge or Fond du Lac, the same as though he were at the

time a resident of that part of said village of Waupun lying and being in the county in which the party or parties, or subject matter to be affected by his proceedings, may reside or be located, and the same as though he were appointed in said county by the circuit judge having jurisdiction over the same.

As the village of Waupun is organized out of territory situated in two counties and in two judicial circuits, the manifest object of this act is to provide for the appointment of a court commissioner residing in the village, who may act in both counties, and exercise authority in each county to the same extent that a court commissioner properly appointed for such county might do. The justification set up in the answer, therefore, necessarily raises the question as to the validity of the act, and whether Jacobs had any power, under the circumstances, to take jurisdiction of the supplemental proceeding; and we are all very clearly of the opinion that the act itself is obnoxious to insuperable objections and cannot be sustained. That it is not in harmony with the intention of the constitution, and not in accord with the general policy of the statute, seems to be plain. The constitution contains this clause, which has a bearing upon the question: "The legislature may provide for the appointment of one or more persons in each organized county, and may vest in such persons such judicial powers as shall be prescribed by law; provided, that such powers shall not exceed that of the judge of the circuit court at chambers." Section 23, art. VII. It may be difficult to define precisely this grant of power, but it is a fair inference that the authority of the court commissioners should have some territorial restriction. The language used, "the legislature may provide for the appointment of one or more persons *in each organized county*," would seem to imply a limitation to the county in the jurisdiction conferred.

Now, suppose the legislature had provided in the act before us for the appointment by the judge of the fourth judicial circuit of one court commissioner, who should reside at the

village of Waupun, and who should be the sole and only court commissioner for Dodge and Fond du Lac counties: could such an act be sustained? And yet, as a mere question of constitutional power, we cannot see why the legislature might not pass a law like the one supposed, as well as chapter 49. The jurisdiction of court commissioners, in the general statute, is restricted to county lines, and this seems to be in strict accord with the constitutional provision. See section 137, ch. 13, Tay. Stats.; section 2434, R. S. Jacobs officially signed the commitments issued by him, "court commissioner, residing at Waupun," not for any county. The jurisdiction which he attempted to exercise under the act was unlike that conferred upon other court commissioners. He exercised power in two counties, and in two circuits. And this, it will be seen, gave rise to many strange anomalies. Residing in Fond du Lac county, appointed by the circuit judge of that county, he issues his order requiring the female plaintiff, a resident of Dodge county, to appear before him, and answer concerning her property. Finally, he commits her to the jail of Dodge county for a contempt in refusing to answer questions asked. All this would seem to be in conflict with section 100, ch. 134, Tay. Stats., regulating such proceedings. The learned circuit court decided that these proceedings were void, and afforded no justification for the imprisonment complained of. We are all perfectly agreed that Jacobs could not properly be said to be a court commissioner *de jure*, and my brethren think he was not even one *de facto*. I have had some doubt upon the latter point, in view of the decisions in the *Case of Boyle*, 9 Wis., 264; *State v. Bloom*, 17 Wis., 521; and *Laver v. McGlachlin*, 28 Wis., 364; but I defer to their judgment on the question.

The court further, as a matter of law, instructed the jury that the defendant, having instigated and directed the proceedings, was responsible in damages for the wrongful imprisonment. We think the court erred in withdrawing from the

jury the question whether the defendant did in fact order, direct or instigate the imprisonment. That was a disputed fact, as we understand the testimony. The defendant distinctly and positively denied that he said anything to the court commissioner about committing *Mrs. Fenelon* on her refusing to answer questions, or that he in any way instigated her imprisonment. It is true, he made the affidavit upon which Jacobs issued his order requiring *Mrs. Fenelon* to appear and answer; but it does not appear, nor is there any reason to suppose, he knew she would refuse to answer questions asked, and be committed for contempt. He might reasonably presume she would submit to a full examination. Her imprisonment certainly was not the necessary or probable consequence of the proceeding instituted by the defendant. The learned counsel for the plaintiff, in justification of the ruling of the court below, relies upon a remark of Mr. Justice LYON in *Bonesteel v. Bonesteel*, 28 Wis., 245, 253, to the effect that one who sets the machinery of the court in motion, and directs its operations until it culminates in an unlawful arrest upon a void process, must be held liable in damages to the injured party.

The remark is strictly true as applied to the facts of that case, which was an unlawful arrest upon a writ of *ne exeat*. The defendant, Mrs. Bonesteel, there procured the writ upon which the plaintiff was arrested; in other words, she caused him to be arrested on a void process. Her agency in the matter was direct and potent. Here, unless we say that a party who makes an affidavit upon which supplemental proceedings are taken by an officer having no jurisdiction, is necessarily responsible for all the possible consequences, and for a commitment which the officer may deem it his duty to make in vindication of the law, the question whether the defendant directed and instigated the imprisonment of *Mrs. Fenelon* should have been submitted to the jury. It seems to us that the mere fact that the defendant made the affidavit, under the circumstances, is not enough to warrant the court in ruling, as

a matter of law, that he was liable for the imprisonment.    It should appear that he did something more to bring about or cause the imprisonment.    For these reasons there must be a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and a new trial ordered.

TAYLOR, J., took no part.