## In re Woolcott.

*March 14—April 11, 1916.*

*Officers* de facto: *Judge of county court: Appointment under void statute and under other name: Color of title: Existence of* de jure *officer.*

1. The person appointed as judge of a superior court under a void act of the legislature (ch. 518, Laws 1915) which purported to create such superior court, to vest in it all the powers of a county court, and to abolish the latter court, having, under color of such appointment and the provisions of said act, ousted the *de jure* county judge, taken possession of the county court room, records, and papers, and thereafter exercised all the powers and functions of the county judge, became a *de facto* judge of the county court and his acts as such are valid as to third persons.

2. Neither the fact that said appointee acted under the name of judge of the superior court in exercising the functions of the county court, nor the fact that there was in existence a *de jure* judge of the county court, affects the validity of the acts of such *de facto* judge.

3. There can be no *de facto* officer of an office which does not exist *de jure;* but where there is a *de jure* office there may be a *de*

*facto* officer thereof even though he was not appointed or elected thereto in the name of such office.

4. *Van Slyke v. Trempealeau Co. F. M. F. Ins. Co.* 39 Wis. 390, and *Fenelon v. Butts*, 49 Wis. 342, distinguished. *Kempster v. Milwaukee*, 97 Wis. 343, explained and language therein qualified.

WRIT of *habeas corpus* issued to test the validity of the commitment of *Erskine Woolcott* to the northern hospital for the insane.

Ch. 518 of the Laws of 1915 purported to create a superior court of Fond du Lac county which should exercise all the functions of the county court thereof and to abolish the latter court. On September 2, 1915, F. W. CHADBOURNE, appointed by the governor as judge of the superior court, demanded possession of the county court room and the records, files, and papers therein from the then duly elected and acting county judge, A. E. RICHTER, who under protest and claiming that he was still county judge delivered up such possession and no longer assumed to act as county judge. Thereafter and until the filing of the decision in *State ex rel. Richter v. Chadbourne* (162 Wis. 410, 156 N. W. 610) on February 22, 1916, declaring void the act creating the superior court and abolishing the county court, Judge CHADBOURNE continued to exercise all the functions of the county court under the name of judge of the superior court of Fond du Lac county. The public recognized such superior court and F. W. CHADBOURNE as judge thereof, and business was transacted in said court by the public until the above mentioned decision was filed. While so acting and on January 3, 1916, after due hearing he adjudged *Erskine Woolcott* insane and ordered him committed to the northern hospital for the insane. That part of ch. 518, Laws of 1915, attempting to confer jurisdiction of the county court upon the superior court reads as follows:

"Section 65. From and after September first, 1915, all of the powers of the county court of Fond du Lac county and

of the county judge shall be and hereby are transferred to and vested in the superior court of Fond du Lac county and its judge.

"Section 66. From and after the first day of September, 1915, the county court of Fond du Lac county shall be and hereby is abolished and the office of the judge of said county court vacated.

"Section 67. All matters and proceedings pending before the county court of Fond du Lac county or the judge thereof on September first, 1915, shall be and hereby are transferred to and vested in the jurisdiction of the superior court of Fond du Lac county and of its judge.

"Section 68. All of the records, files, proceedings and property of the county court of Fond du Lac county on September first, 1915, shall be and hereby are turned over to and vested in the superior court of Fond du Lac county and its judge."

Petitioner claims that Judge CHADBOURNE had no jurisdiction to hear and determine the matter and hence that the commitment is void.

*R. L. Morse,* for the petitioner.

For the respondent there was a brief by the *Attorney General* and *E. E. Brossard,* assistant attorney general, and oral argument by *Mr. Brossard.*

A brief was also filed by *Doe, Ballhorn, Wilkie & Doe,* as friends of the court, and the cause was argued orally by *H. M. Wilkie.*

VINJE, J.    The relator challenges the validity of his commitment to the asylum on the ground that Judge CHAD-BOURNE was neither a *de jure* nor a *de facto* judge of the county court, and could not be either while purporting to act as judge of the superior court; that he was a mere intruder, and his acts were therefore void and subject to collateral attack.    To sustain this position the following cases from our own court are cited: *Van Slyke v. Trempealeau Co. F. M. F. Ins. Co.* 39 Wis. 390; *Fenelon v. Butts,* 49 Wis. 342, 5 N. W. 784; *Kempster v. Milwaukee,* 97 Wis. 343, 72 N. W. 743.    Before calling specific attention to these cases it is

deemed best to state the situation in the case at bar. The decision in *State ex rel. Richter v. Chadbourne,* 162 Wis. 410, 156 N. W. 610, established the facts (1) that the county court of Fond du Lac county was not abolished by ch. 518 of the Laws of 1915 and the acts amendatory thereof; (2) that Judge CHADBOURNE ousted the *de jure* judge thereof, took possession of the county court room, records, papers, and files, and from September 1, 1915, continued to exercise all the functions of county judge under the title of judge of the superior court; and (3) that he ousted the county judge under color of title, namely, his appointment as judge of the superior court by the governor of the state and the provisions in ch. 518 that the jurisdiction of the county court was transferred to the superior court. We have therefore the existence of a *de jure* office, the county court, the ousting therefrom, under color of title, of the *de jure* officer thereof, the county judge, by Judge CHADBOURNE, and his exercise of all the functions of the office of the county court under the name of judge of the superior court. County courts were created by the constitution under the name of courts of probate (art. VII, sec. 2), and though under sec. 14, art. VII, the jurisdiction may be transferred to other inferior courts lawfully established, their function cannot be abolished by the legislature. Hence the attempted creation of the superior court and the transfer thereto of the jurisdiction of the county court did not affect the existence of the county court as a *de jure* office. Judge CHADBOURNE's entrance into, and continuance in, such office meets all the requirements of a *de facto* officer as defined by this court in *Ekern v. McGovern,* 154 Wis. 157, 220, 142 N. W. 595, where it said:

"A person may be a *de facto* officer and have no real title at all to the place he assumes to have the right to. If one is in possession of an office, performing its duties, and entered by right *or such claim of right* as not to be classible as a usurper, or have been in undisturbed possession so long as to be equivalent to an entry under claim of right, and still claims in good faith to be entitled to the office, and all sur-

roundings afford an appearance of *de jure* official status,—he is, as a general rule, *de facto* what he claims to be. What gives him that status is color of authority,—color of title is not essential, strictly speaking."

The authorities supporting this definition of a *de facto* officer are collected in the *Ekern Case* and need not be repeated here. ` In *Norton v. Shelby Co.* 118 U. S. 425, 444, 6 Sup. Ct. 1121, the court uses this language:

"Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts is concerned. It is enough that he is clothed with the insignia of the office, and exercises its powers and functions."

The reason for the rule that acts done by a *de facto* officer in a *de jure* office are valid rests upon grounds of public policy. If the contrary were held, official acts of the gravest character would have to be declared void by reason of a defect in the title of the incumbent to the office. Property and personal rights would be subject to constant hazards, arising not out of any infirmity in the procedure settling them, but out of a defect in the title of the official exercising the functions of the office—a defect not in any way logically connected with the proper exercise of the assumed functions. Hence, given a *de jure* office and a *de facto* incumbent thereof, there is a valid exercise of the powers of the office.

The fact that Judge CHADBOURNE acted under the name of judge of the superior court instead of judge of the county court is immaterial. His so acting was under the color of a right conferred by the void acts creating the superior court. Under such color of right he assumed to, and did in fact, exercise all the powers and functions of the county court. That he did not assume the name of the office is due to the fact that he supposed the jurisdiction of the county court was transferred to the superior court and that he was authorized to transact the business of the former court under the title of the latter. There never was any doubt in the minds of either

parties, counsel, court, or the public that Judge CHADBOURNE
in acting upon matters under the jurisdiction of the county
court did so to the exclusion of the county judge.   That is
what the void law said he should do and that is what he did.
Having taken the substance of the office he is none the less a
*de facto* judge though he did not assume its title.   The in-
herent character of an act is not destroyed by a mere change
in the form thereof, nor is such character changed by giving
it a new name.   The functions that belong to an office and not
its name determine its identity.   *Kirker v. Cincinnati,* 48
Ohio St. 507, 27 N. E. 898.

That there was in existence a *de jure* officer of the county
court at the time Judge CHADBOURNE was *de facto* judge
thereof does not affect the validity of his acts as a *de facto*
judge, he having ousted the *de jure* judge and exercised the
functions of the office.   *In re Boyle,* 9 Wis. 264; *State v.
Bloom,* 17 Wis. 521; *Laver v. McGlachlin,* 28 Wis. 364.

If we analyze the cases in this state referred to as more
particularly relied upon by the relator, we find that *Van
Slyke v. Trempealeau Co. F. M. F. Ins. Co.* 39 Wis. 390, was
a case where under a statute declared to be unconstitutional
it was provided that instead of a change of venue upon a
disqualification of the circuit judge the parties might stipu-
late to try the case before a member of the bar of the supreme
court, and the validity of a judgment of an attorney so chosen
came into question.   The court held it void on the ground
that there was no *de jure* office which the attorney acting as
judge attempted to fill.   He did not claim to act as a circuit
judge nor attempt to oust him from office.   The judgment
was therefore *coram non judice.*   In *Fenelon v. Butts,* 49
Wis. 342, 5 N. W. 784, it was held that a court commissioner
could not lawfully be appointed to exercise jurisdiction in
two counties; that a person so appointed was not appointed
to any office known to the law and hence could not be a *de
facto* officer of any lawful office, and his acts were void.   In

both of these cases there was an absence of a *de jure* office. The same is true in *Kempster v. Milwaukee,* 97 Wis. 343, 72 N. W. 743, though the real question there decided was the right of the *de jure* officer to his salary during the time he had been wrongfully excluded from office. The validity of the acts of the alleged *de facto* officer was not in question and was not adjudicated. Language in the opinion to the effect that there was no *de facto* health commissioner must be construed in conjunction with the charter provisions that there was no such office as "acting commissioner of health" in Milwaukee, that being the office to which the alleged *de facto* officer was appointed, and the further charter requirement that the appointment to the office of health commissioner by the mayor must be confirmed by the common council—the appointment in question not having been so confirmed. The court reached the conclusion that since the mayor's appointment was to an office that did not exist, there could be no *de facto* officer of such office. It then goes on to state that "the mere designation of a person, without authority of law, to perform the duties of the office, did not make such person an officer *de facto,* or furnish any justification for payment of the salary incident to the office to such person, that can be pleaded in defense of the claim of the officer *de jure,* made upon his regaining his office." The court was dealing with the question of salary and not with the question of the validity of the acts of *de facto* officers. If there be language in the opinion which can be construed to the effect that, given a *de jure* office, there can be no *de facto* officer thereof unless the appointment or election thereto is *eo nomine* and in all respects regular, it is disapproved and held not applicable to a case involving the validity of the acts of a *de facto* officer.

In *Van Slyke v. Trempealeau Co. F. M. F. Ins. Co.* 39 Wis. 390, 396, the court through RYAN, C. J., quotes approvingly this language from *In re Boyle,* 9 Wis. 264:

"Every person assuming to exercise the authority of an officer, does not thereby make himself an officer *de facto.*

But when it appears that the person exercising the powers of an office, is in by such a color of right, and that he has such possession of the office, as makes him an officer *de facto,* then his acts as to third persons are valid, and his right to hold the office can only be inquired into in some direct proceeding for that purpose."

The cases of *In re Boyle,* 9 Wis. 264; *State v. Bloom,* 17 Wis. 521; and *Laver v. McGlachlin,* 28 Wis. 364, were distinguished from the case then under consideration on the ground that in the cases mentioned the judge held the office under color of title.   So in the present case Judge CHAD-BOURNE held under color of title, had complete possession of the office, room, records, and papers of the county court, an existing *de jure* office, and exercised in full the powers and duties thereof.   For that reason he was a *de facto* judge of a *de jure* court and his acts are valid as to third persons.

*By the Court.*—The writ of *habeas corpus* is quashed.